**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | | |
|---|---|---|
| | * | |
| **DAWN J. BENNETT,** *et al.*, | * | |
| **Plaintiffs,** | * | **Case No.: PWG-15-3325** |
| **v.** | * | |
| **U.S. SECURITIES & EXCHANGE COMMISSION,** | * | |
| | * | |
| **Defendant.** | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION AND ORDER**

After investigating Plaintiffs Dawn J. Bennett and Bennett Group Financial Services, LLC for more than three years with regard to alleged violations of federal securities laws, the U.S. Securities and Exchange Commission (the "Commission" or "SEC") instituted an administrative proceeding against them. Compl. ¶ 5, ECF No. 1. And, as part of the proceeding, the Commission scheduled a hearing to begin January 25, 2016 before an administrative law judge ("SEC ALJ"). Pls.' Mem. in Supp. of Mot. for Temp. Restraining Order 1–2, ECF No. 5. In an effort to halt the administrative proceeding permanently, Plaintiffs filed suit, claiming that SEC ALJs are "inferior Officers," but, in violation of the Appointments Clause, U.S. Const., art. II, § 2, cl. 2, they are not appointed by the SEC Commissioners, who are considered "Heads of Department" and therefore have appointment power. *See* Compl. ¶¶ 2–4. They also claim that the ability to remove SEC ALJs from office, which can be done only for good cause, is vested in other officers who also can be removed only for good cause, in violation of Article II, as construed in *Free Enterprise Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477, 484

(2010).  *Id.*  Plaintiffs ask this Court (1) to "enjoin[] the Commission from carrying out an administrative proceeding against Plaintiffs" and (2) to declare unconstitutional both "the statutory and regulatory provisions and practices for selecting and designating SEC ALJs" and "the statutory and regulatory provisions providing for the position of SEC ALJ and the tenure protection for that position."  *Id.* at 22.

Additionally, with the January hearing imminent, Plaintiffs filed a motion for a preliminary injunction to prevent the administrative proceeding from moving forward during the pendency of this litigation.  ECF No. 22.  The parties fully briefed the motion, ECF Nos. 24, 26, 27, and I held a hearing on the matter on December 10, 2015.  Because I found that this Court lacks jurisdiction, I denied Plaintiffs' motion and dismissed this case.  ECF No. 29.  This Memorandum Opinion reiterates and amplifies my rulings made in open court.

## Jurisdiction

The federal district courts "shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331; *see also* 28 U.S.C. § 2201 (federal district court may grant declaratory relief "[i]n a case of actual controversy within its jurisdiction").  But, a statute providing for agency review will divest the federal district courts of jurisdiction if "the 'statutory scheme' displays a 'fairly discernible' intent to limit jurisdiction, and the claims at issue 'are of the type Congress intended to be reviewed within th[e] statutory structure.'"  *Free Enters. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 489 (2010) (quoting *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207, 212 (1994) (internal quotation marks omitted)).  Congress did not intend claims the be reviewed within the statutory scheme, that is, by the agency only, "if [1] 'a finding of preclusion could foreclose all meaningful judicial review'; [2] the suit is 'wholly collateral to a statute's review

provisions'; and [3] the claims are 'outside the agency's expertise.'" *Id.* (quoting *Thunder Basin*, 510 U.S. at 212–13 (internal quotation marks omitted)).   Courts weigh the first factor most heavily.   *See, e.g.*, *Bebo v. S.E.C.*, 799 F.3d 765, 775 (7th Cir. 2015) (referring to the first *Thunder Basin* factor as "the most critical thread in the case law" and finding it dispositive); *Altman v. S.E.C.*, 768 F. Supp. 2d 554, 559–60 (S.D.N.Y. 2011) (observing that the first *Thunder Basin* factor "seems most important" and "trumps other considerations"), *aff'd*, 687 F.3d 44 (2d Cir. 2012) (per curiam).

### A.  Intent of Statutory Scheme

The Securities and Exchange Act of 1934, 15 U.S.C. §§ 78a *et seq.*, provides for review of final administrative orders in the federal courts of appeals.   *See also* 15 U.S.C. §§ 80b-1 – 80b-21 (Investment Advisers Act).   In *Free Enterprise Fund*, the Supreme Court concluded that, under facts that are distinguishable from this case, this statutory scheme did "not expressly limit the jurisdiction that other statutes confer on district courts," and did not "do so implicitly," suggesting that any intent to limit jurisdiction over the petitioners' claims was not fairly discernible.   *See Free Enters. Fund*, 561 U.S. at 489.   More recent circuit decisions in other contexts, however, have found the intent to be fairly discernible in this statutory scheme.   *See Jarkesy v. S.E.C.*, 803 F.3d 9, 17 (D.C. Cir. 2015) ("'Given the painstaking detail with which' Congress set forth the rules governing the court of appeals' review of Commission action, 'it is fairly discernible that Congress intended to deny [aggrieved respondents] an additional avenue of review in district court.'" (quoting *Elgin v. Dep't of Treas.*, 132 S. Ct. 2126, 2134 (2012))); *Bebo*, 799 F.3d at 767 ("It is 'fairly discernible' from the statute that Congress intended plaintiffs *in Bebo's position* 'to proceed exclusively through the statutory review scheme' set forth in 15 U.S.C. § 78y." (quoting *Elgin*, 132 S. Ct. at 2132) (emphasis added)).

Notably, the plaintiffs' positions in *Bebo* and *Jarkesy* were distinct from that of the petitioners in *Free Enterprise Fund*: In *Bebo* and *Jarkesy*, as in this case, the plaintiffs sought to enjoin agency enforcement proceedings that already had begun, whereas in *Free Enterprise Fund*, the petitioners would have had to violate the law to induce agency action from which they then could bring a claim, as discussed in further detail below. In any event, notwithstanding their finding that the intent to limit jurisdiction was fairly discernible from the statutory scheme, the *Bebo* and *Jarkesy* Courts addressed the *Thunder Basin* factors to determine whether Congress intended to limit jurisdiction with regard to the specific claims at issue. *See Bebo*, 799 F.3d at 773–75; *Jarkesy*, 803 F.3d at 18–24; *see also Free Enters. Fund*, 561 U.S. at 489 (stating that statutory scheme divests court of jurisdiction if the statute shows "a 'fairly discernible' intent to limit jurisdiction, *and* the claims at issue 'are of the type Congress intended to be reviewed within th[e] statutory structure'" (quoting *Thunder Basin*, 510 U.S. at 207, 212) (emphasis added)).

Thus, given that Plaintiffs' constitutional claims relate to ongoing administrative proceedings, following *Bebo* and *Jarkesy*, it appears that Congress's intent to limit district court jurisdiction is fairly discernible. *See Bebo*, 799 F.3d at 767; *Jarkesy*, 803 F.3d at 17. In keeping with *Bebo* and *Jarkesy*, I considered the *Thunder Basin* factors to determine jurisdiction in this particular instance. And, a review of the *Thunder Basin* factors reinforced the conclusion that Plaintiffs' constitutional claims first must be reviewed through the administrative process (followed by review at the Court of Appeals), and not through a district court action.

### B. *Thunder Basin* Factors

*Free Enterprise Fund*, 561 U.S. 477, is the starting point for my analysis of the *Thunder Basin* factors. In *Free Enterprise Fund*, the petitioners' challenge pertained not to the

constitutionality of the appointment of an SEC ALJ but rather to the constitutionality of the Public Company Accounting Oversight Board ("Board"), which operated under Commission oversight. 561 U.S. at 485–86. At the time the petitioners filed suit in district court, the Board had begun a formal investigation but had not issued a final order imposing sanctions against them. Moreover, it would not necessarily do so, as the Board did not issue a final order as to every action that it took.

Significantly, judicial review was available only for Commission, not Board, action. Therefore, when the petitioners sought to challenge the very existence of the Board, rather than one of its rules or a sanction it imposed, there was nothing for them to appeal to obtain federal court review within the statutory scheme. The Government argued that the petitioners should "*incur* a sanction (such as a sizable fine) by ignoring Board requests for documents and testimony" as a means to "win access to a court of appeals." *Id.* at 490. The Supreme Court did "not consider this a 'meaningful' avenue of relief," *id.* at 490–91 (quoting *Thunder Basin*, 510 U.S. at 212), noting that the Court "normally do[es] not require plaintiffs to 'bet the farm . . . by taking the violative action' before 'testing the validity of the law,'" *id.* at 490 (quoting *MedImmune, Inc. v. Genetech, Inc.*, 549 U.S. 118, 129 (2007)). On the basis of facts not found in this case, the Supreme Court concluded that preclusion of district court jurisdiction would foreclose all meaningful judicial review. *Id.*

The *Free Enterprise Fund* Court next concluded that the "general challenge" the petitioners made to the Board was "'collateral' to any Commission orders or rules from which review might be sought," given that "[the] petitioners object[ed] to the Board's existence, not to any of its auditing standards," and there was no proceeding pending from which they could appeal. *Id.* at 490. Additionally, the Court concluded that the claims at issue were "outside the

Commission's competence and expertise," as they did not "require 'technical considerations of [agency] policy.'"   *Id.* at 491 (quoting *Johnson v. Robison*, 415 U.S. 361, 373 (1974) (emendation in *Free Enters. Fund*).

Two years later, the Supreme Court reconsidered the *Thunder Basin* factors in *Elgin v. Department of Treasury*, 132 S. Ct. 2126 (2012), taking a different tack in its analysis of what qualifies as a "wholly collateral" claim.   There, Elgin, a federal employee discharged for a statutory violation, appealed to the Merit Systems Protection Board ("MSPB"), in accordance with the Civil Service Reform Act ("CSRA"), 5 U.S.C. § 1101, which governed review of adverse federal employment actions. *Id.* at 2130–31.  He argued that the statute he was found to have violated was unconstitutional, and the MSPB dismissed the appeal. *Id.*  Thereafter, instead of appealing to the Federal Circuit, which had "'exclusive jurisdiction' over appeals from a final decision of the MSPB" under the CSRA, Elgin, along with the other discharged employees, brought the same constitutional claims in federal district court, which concluded that it had jurisdiction to hear the claims. *Id.*

After the First Circuit vacated, holding that the district court lacked jurisdiction, the Supreme Court granted certiorari to determine whether there was "an exception to CSRA exclusivity for facial or as-applied constitutional challenges to federal statutes." *Id.* at 2131–32, 2134.  The Court considered the text, structure, and purpose of the CSRA and concluded that it was "fairly discernible that Congress intended to deny . . . employees [who could seek review in the Federal Circuit] an additional avenue of review in district court." *Id.* at 2133–34.  Reasoning that "'the distinction between facial and as-applied challenges is not so well defined that it has some automatic effect,'" and that jurisdictional determinations cannot "involve . . . amorphous distinctions," it held that the CSRA's "exclusivity does not turn on the constitutional nature of an

employee's claim, but rather on the type of the employee and the challenged employment action." *Id*. at 2135–36 (quoting *Citizens United v. Federal Election Comm'n*, 558 U.S. 310, 331 (2010)).

The Court then analyzed the *Thunder Basin* factors to discern whether Congress intended for the claims at issue to be reviewed within the statutory scheme of the CSRA. It stated that whether the MSPB actually had, or believed that it had, the authority to determine the constitutionality of statutes was irrelevant to whether an employee could obtain meaningful review under the statutory scheme. *Elgin*, 132 S. Ct. at 2136–37. The Court reasoned that Congress could "inten[d] to preclude district court jurisdiction" even where "the administrative body could not decide the constitutionality of a federal law," because the issue nonetheless "could be 'meaningfully addressed in the Court of Appeals.'" *Id.* (quoting *Thunder Basin*, 510 U.S. at 215). It observed that "the CSRA review scheme fully accommodates an employee's potential need to establish facts relevant to his constitutional challenge to a federal statute," through judicial notice and the MSPB's authority "to take evidence and find facts for Federal Circuit review," such that "constitutional claims can receive meaningful review within the CSRA scheme." *Id*. at 2138–39.

With regard to the second *Thunder Basin* factor, the Supreme Court concluded that petitioners' constitutional claims were not "wholly collateral" to the CSRA scheme because they were "the vehicle by which [the petitioners sought] to reverse the removal decisions, to return to federal employment, and to receive the compensation they would have earned but for the adverse employment action." *Id.* at 2139–40. It reasoned that "[a] challenge to removal is precisely the type of personnel action regularly adjudicated by the MSPB and the Federal Circuit within the CSRA scheme," and "reinstatement, backpay, and attorney's fees are precisely the kinds of relief

that the CSRA empowers the MSPB and the Federal Circuit to provide," that is, "relief that the SCRA routinely affords." *Id.* at 2140.   As for the third factor—whether the claims fell within the agency's expertise—, the Supreme Court observed that there may be "many threshold questions that may accompany a constitutional claim and to which the MSPB can apply its expertise," such as questions concerning the petitioners' employment and questions of interpreting a statute that "the MSPB routinely considers," either of which could dispose of the case without the need to reach the constitutional issues. *Id.   See generally Slack v. McDaniel*, 529 U.S. 473, 485 (2000) (noting that courts "'will not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of'" (quoting *Ashwander v. TVA*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring)).

Since the *Free Enterprise* and *Elgin* cases were decided, two Courts of Appeals have addressed the jurisdictional question I must decide.   *Bebo v. S.E.C.*, 799 F.3d 765 (7th Cir. 2015), provides an extremely helpful analysis of *Free Enterprise Fund* and *Elgin*, especially with regard to the meaning of "wholly collateral" and the interplay among the *Thunder Basin* factors. Bebo, the subject of an administrative enforcement proceeding before the Commission, challenged the constitutionality of the proceeding in federal district court on grounds including an Article II violation. The district court found that it lacked jurisdiction, reasoning that "[a]ppellate review [of the administrative proceeding] in the court of appeals is sufficient." *Bebo v. S.E.C.*, 2015 WL 905349, at *4 (E.D. Wis. Mar. 3, 2015).   When Bebo argued on appeal that the applicable administrative review scheme was "inadequate because, by the time she is able to seek judicial review in a court of appeals, she will have already been subjected to an unconstitutional proceeding," the Seventh Circuit was unsympathetic, reasoning that the Supreme Court already "rejected this type of argument in *FTC v. Standard Oil Co.*, 449 U.S.

232, 244 (1980), holding that the expense and disruption of defending oneself in an administrative proceeding does not automatically entitle a plaintiff to pursue judicial review in the district courts, even when those costs are 'substantial.'" *Bebo*, 799 F.3d at 775.

The Seventh Circuit concluded that the first *Thunder Basin* factor (meaningful judicial review) militated against the district court's exercise of jurisdiction because Bebo was "already the respondent in a pending enforcement proceeding, so she [did] not need to risk incurring a sanction voluntarily just to bring her constitutional challenges before a court of competent jurisdiction," as the *Free Enterprise Fund* petitioners would have had to do, and following the administrative proceeding, she would be able to "raise her objections in a circuit court of appeals established under Article III." *Id.* at 774–75. In so doing, the Seventh Circuit relied heavily on *Elgin*, observing:

> First, *Elgin* made clear that [a plaintiff] cannot sue in district court under § 1331 merely because her claims are facial constitutional challenges. Second, it established that jurisdiction does not turn on whether the SEC has authority to hold [a statute] unconstitutional, nor does it hinge on whether [a plaintiff's] constitutional challenges fall outside the agency's expertise. Third, *Elgin* showed that the ALJ's and SEC's fact-finding capacities, even if more limited than a federal district court's, are sufficient for meaningful judicial review. Finally, *Elgin* explained that the possibility that [a plaintiff] might prevail in the administrative proceeding (and thereby avoid the need to raise her constitutional claims in an Article III court) does not render the statutory review scheme inadequate.

*Id.* at 773.

The *Bebo* Court then turned to the second factor (wholly collateral), noting that "[n]either *Elgin* nor *Free Enterprise Fund* clearly defines the meaning of 'wholly collateral,'" and that, in their wake, courts have split in how they determine whether a claim is wholly collateral. *Bebo*, 799 F.3d at 773. Some courts "focus on the relationship between the merits of the constitutional claim and the factual allegations against the plaintiff in the administrative proceeding," finding

the claim to be wholly collateral if the factual history is distinct, in keeping with *Free Enterprise Fund. Id.* (citing *Hill v. S.E.C.*, --- F. Supp. 3d ----, ----, 2015 WL 4307088, at *9 (N.D. Ga. June 8, 2015); *Duka v. S.E.C.*, --- F. Supp. 3d ----, ----, 2015 WL 1943245, at *6 (S.D.N.Y. Apr. 15, 2015); *Gupta v. S.E.C.*, 796 F. Supp. 2d 503, 513 (S.D.N.Y. 2011)).   Others "focus on whether the constitutional claims are being raised as a 'vehicle' to challenge agency action taken during an administrative proceeding, finding the claim not to be wholly collateral if it is that "vehicle," in keeping with *Elgin. Id.* at 773–74 (citing *Tilton v. S.E.C.*, No. 15–CV–2472(RA), 2015 WL 4006165, at *12 (S.D.N.Y. June 30, 2015); *Bebo v. S.E.C.*, 2015 WL 905349, at *4 (E.D. Wis. Mar. 3, 2015)). Thus, the court acknowledged that it is not fully settled which approach a court should take.  *See id.*

Nonetheless, it observed that "Bebo's suit can reasonably be characterized as 'wholly collateral' to the statute's review provisions and outside the scope of the agency's expertise," *Bebo*, 799 F.3d at 767, but then "assumed for purposes of argument that Bebo's claims [were] 'wholly collateral' to the administrative review scheme," without choosing an approach or resolving either the second or the third *Thunder Basin* factor, *id.* at 774.   Rather, the court stated that whether the claims were wholly collateral was immaterial, because "the most critical thread in the case law is the first *Free Enterprise Fund* [and *Thunder Basin*] factor: whether the plaintiff will be able to receive meaningful judicial review without access to the district courts."  *Id.* at 774.  It reasoned that the second and third factors were "relevant" but "not controlling" because "the Supreme Court has never said that any of them are sufficient conditions to bring suit in federal district court under § 1331."  *Id.*  Thus, because the statutory scheme did not foreclose all meaningful judicial review, the Seventh Circuit held that Bebo "must pursue judicial review in

the manner prescribed by the statute," even if her claims were wholly collateral to the statutory scheme and beyond the agency's expertise. *Id.* at 767.

The most recent appellate consideration of this issue to date was in *Jarkesy v. S.E.C.*, 803 F.3d 9, 11 (D.C. Cir. 2015), in which an individual subject to an administrative proceeding before the Commission filed suit in district court, alleging constitutional violations and seeking termination of the administrative proceeding. The district court dismissed for lack of jurisdiction and the D.C. Circuit affirmed, *id.*, on the basis that all three *Thunder Basin* factors indicated that Jarkesy's constitutional claims against the Commission did not "fall outside an overarching congressional design." *Id.* at 17–18, 22.

As for the first factor, the D.C. Circuit concluded that "'a finding of preclusion' would not 'foreclose all meaningful judicial review' of Jarkesy's claims," *id.* at 20, observing that the Supreme Court in *Elgin* "reiterated that, so long as a court can *eventually* pass upon the challenge," parties can be required to bring constitutional challenges "through the administrative route." 803 F.3d at 18 (quoting *Elgin*, 132 S. Ct. at 2136–37) (emphasis added). Similar to the *Bebo* Court, the D.C. Circuit differentiated *Free Enterprise Fund*, noting that "the considerations animating the [Supreme] Court's decision in *Free Enterprise* [were] absent" because "Jarkesy would not have to erect a Trojan-horse challenge to an SEC rule or 'bet the farm' by subjecting himself to unnecessary sanction under the securities laws," as "Jarkesy [was] already properly before the Commission," and "should the Commission's final order run against him, a court of appeals [was] available to hear those challenges." *Id.* Likewise, "Jarkesy's situation [did] not share the characteristics that led the Court to permit a judicial challenge outside the administrative scheme" in *McNary v. Haitian Refugee Ctr. Inc.*, 489 U.S. 479, 492 (1991), because, as noted, Jarkesy would not have to "'bet the farm'" to secure judicial review, and

Jarkesy would not be precluded from obtaining the discovery necessary to substantiate his constitutional challenges.  *Id.* at 21.  Noting that in *Bebo*, the Seventh Circuit found the presence of meaningful judicial review sufficient in and of itself to conclude that the district court lacked jurisdiction, the D.C. Circuit, having found meaningful judicial review to be available to Jarkesy, instead opted to "approach the various factors as guideposts for a holistic analysis," and addressed them each in turn. *Id.* at 22.

With regard to the second factor, the D.C. Circuit relied on *Elgin* to conclude that Jarkesy's claims were not collateral because they "ar[o]se from actions the Commission took *in the course of* [the Commission's administrative enforcement scheme]" and were "the 'vehicle by which' Jarkesy [sought] to prevail in his administrative proceeding," such that they were "'inextricably intertwined with the conduct of the very enforcement proceeding the statute grants the SEC the power to institute and resolve as an initial matter.'" *Jarkesy*, 803 F.3d at 23 (quoting district court) (emphasis added).  The court noted that, while the Supreme Court reached the opposite conclusion in *Free Enterprise Fund*, the circumstances were different there because the *Free Enterprise Fund* petitioners brought their claims *before* any enforcement proceedings began, such that they were "not *in* [the administrative review] scheme at all." *Id.* It was pivotal to the D.C. Circuit's decision that "Jarkesy brought th[e] action *after* the Commission had initiated its enforcement proceedings against him, and he [sought] to challenge multiple aspects of that ongoing proceeding." *Id.* (emphasis added).  The court stated that "[t]he result might be different if a constitutional challenge were filed in court *before* the initiation of any administrative proceeding . . . ." *Id.* (emphasis added).  The nature of the constitutional claims was not relevant, however, because the parties and the court would not have "'clear guidance about the proper forum for the employee's claims at the outset of the case'" if they had to rely on

"the framing of a constitutional challenge—based on potentially 'hazy,' 'amorphous,' and 'incoherent' categories." *Id*. at 24 (quoting *Elgin*, 132 S. Ct. at 2135).

Although not directly on point, the Fourth Circuit's jurisdictional analysis in *Virginia v. United States*, 74 F.3d 517 (4th Cir. 1996), also is instructive. There, the Environmental Protection Agency ("EPA") "took final action" against the Commonwealth of Virginia under the Clean Air Act ("CAA"), and Virginia filed suit in district court "to challenge the constitutionality of various provisions of the [CAA]." *Virginia*, 74 F.3d at 519, 521. The Fourth Circuit affirmed the district court's conclusion that it lacked jurisdiction. *Id.* at 519. It observed that, although Virginia sought "a ruling that certain parts of the CAA are unconstitutional, the practical objective of the complaint [was] to nullify final actions of EPA." *Id.* at 523. Therefore, it was "of no consequence" that Virginia brought constitutional claims, because jurisdiction under the relevant statute "turn[ed] on whether final agency action [was] the target of the challenger's claim," which it was. *Id.* Thus, the Fourth Circuit held that, even though Virginia "fram[ed] its complaint as a constitutional challenge to the CAA," and insisted that it did "'not seek a review of any final EPA action,'" but rather directed "its 'constitutional challenge … to the statute itself," judicial "review was available in the circuit court under [the CAA] and that review [was] exclusive." *Id.* at 522. Specifically, Virginia could have obtained judicial review through an appeal of the EPA action within the statutory scheme. *Id.* at 519; *see also Nat'l Taxpayers Union v. U.S. Soc. Sec. Admin.*, 376 F.3d 239, 240–41, 243–44 (4th Cir. 2004) (applying the three *Thunder Basin* factors to conclude that district court lacked jurisdiction over a constitutional challenge to administrative proceedings before the Social Security Administration, given that the constitutional claims could have been "meaningfully addressed by the court of appeals in due course"; noting that "'[t]here is simply no impediment to the adjudication of

constitutional issues through petitions for direct review of final agency actions in the circuit courts'" (quoting *Virginia*, 74 F.3d at 523)).   With these opinions in mind, I consider the *Thunder Basin* factors in this case.

### 1.  Meaningful Judicial Review

Pursuant to the Securities and Exchange Act, an SEC ALJ may preside over an administrative proceeding and issue an initial decision, but the Commission "alone possesses the authority to issue a final order."  *Jarkesy v. S.E.C.*, 803 F.3d 9, 12–13 (D.C. Cir. 2015); *see* 17 C.F.R. §§ 201.110, 201.111(i), 201.360(a)(1), (b)(1), (d), 201.410(a), 201.411(a).   Consequently, unlike in *Free Enterprise Fund*, where Board action would not necessarily lead to a Commission order that the petitioners could appeal, the SEC ALJ's decision in this case will not go into effect until the Commission acts.   *See Jarkesy*, 803 F.3d at 12–13; 17 C.F.R. § 201.411(a). Significantly, "final Commission orders can be reviewed in the courts of appeals."  *Jarkesy*, 803 F.3d at 13 (citing 15 U.S.C. § 78y(a)(1)).   Therefore, if Plaintiffs are aggrieved, it will be by operation of a final, appealable Commission decision.  *See id.*

And, because Plaintiffs already are facing agency enforcement for past allegedly violative conduct, they will not have to intentionally violate a law to appear before an SEC ALJ, obtain a final appealable decision, and ultimately obtain judicial review.  Again, unlike in *Free Enterprise Fund*, the "'bet the farm'" element that precluded meaningful judicial review is not present.  *See Free Enters. Fund*, 561 U.S. at 489 (quoting *MedImmune*, 549 U.S. at 129); *see also Jarkesy*, 803 F.3d at 18 (appellate review meaningful where administrative proceeding already underway); *Bebo*, 799 F.3d at 774–75 (same).   In sum, if this Court lacks subject matter jurisdiction over the pending case, Plaintiffs nonetheless can obtain judicial review through the appellate process under the Securities and Exchange Act.  Granted, under this scheme, Plaintiffs

cannot obtain judicial review until they reach a federal appellate court.   *See* 15 U.S.C. § 78y(a)(1).  Thus, the issue is whether this delayed judicial review would be "meaningful." *See Thunder Basin*, 510 U.S. at 212–13; *Free Enters. Fund*, 561 U.S. at 489.

The Southern District of New York in *Tilton v. S.E.C.*, No. 15-2472, 2015 WL 4006165, at *4–6 (S.D.N.Y. June 30, 2015), recently reasoned that such a delay did not foreclose meaningful review because "[o]ftentimes in our system, a party challenging the legality of the very proceeding or forum in which she is litigating must 'endure' those proceedings before obtaining vindication."   For example, in criminal proceedings, defendants raise constitutional challenges in district court and cannot appeal the trial court holdings until trial concludes.  *See, e.g.*, *United States v. Williams, Jr.*, No. 14-4049 (4th Cir. Dec. 14, 2015) (slip op.) (post-conviction appeal on Fourth Amendment grounds based on district court's denial of defendant's motion to suppress).  Previously, the Southern District of New York similarly observed:

> At least some SEC respondents seem to believe that they can procure a one-way ticket out of an agency proceeding and into district court simply by raising a constitutional allegation. *Thunder Basin, Free Enterprise Fund,* and good sense say otherwise. This Court's jurisdiction is not an escape hatch for litigants to delay or derail an administrative action when *statutory channels of review are entirely adequate*. . . . [T]he Court concludes that permitting plaintiffs to seek pre-enforcement relief from the SEC in this case would be "inimical to the structure and purposes" of the statutory review scheme governing SEC adjudications and would not provide an otherwise unavailable means of effective judicial review. The Court therefore lacks subject matter jurisdiction and the complaint must be dismissed.

*Chau v. S.E.C.*, 72 F. Supp. 3d 417, 425–26 (S.D.N.Y. 2014) (footnote omitted) (emphasis added); *see Altman v. S.E.C.*, 768 F. Supp. 2d 554, 559–60 (S.D.N.Y. 2011) (concluding that, "as the Exchange Act explicitly provides for it, Altman's claim could be meaningfully addressed in the Court of Appeals"), *aff'd*, 687 F.3d 44 (2d Cir. 2012) (per curiam).  Indeed, the Supreme Court and the D.C. Circuit have said that all that is necessary for meaningful judicial review is

that "a court can *eventually* pass upon the challenge." *Elgin*, 132 S. Ct. at 2136–37 (emphasis added); *Jarkesy*, 803 F.3d at 18 (quoting *Elgin*).

It is true that *Chau* and *Tilton* are on appeal to the Second Circuit, and the Second Circuit stayed the Commission's administrative action in *Tilton* while it reviews the district court's decision.  *See Tilton v. S.E.C.*, No. 15-2103, Order (2d Cir. Sept. 17, 2015), Morris Decl. Ex. 3, ECF No. 23-3; *Chau v. S.E.C.*, No. 15-461, Order (2d Cir. Dec. 4, 2015) (adjourned pending decision in *Tilton v. S.E.C.*, No. 15-2103 (2d Cir.).  But, I cannot discern the grounds for the stay from the Second Circuit's enigmatic order, which states, in full: "On application of the Appellants, the Securities and Exchange Commission proceedings against Appellants are STAYED pending further order of this Court."  *Id.*  And, the Second Circuit already affirmed *Altman* "for the reasons set forth in [the district court's] thorough and well-reasoned opinion." *Altman*, 687 F.3d at 46.

The Southern District of New York previously reached the opposite conclusion in *Gupta v. S.E.C.*, 796 F. Supp. 2d 503, 513 (S.D.N.Y. 2011), deciding (without the benefit of *Bebo* or *Jarkesy*) that only in district court could the plaintiff obtain meaningful judicial review of his equal protection claim.  In that factually-inapposite case, the Commission had brought claims against twenty-eight other individuals and entities in federal district court before it instituted administrative proceedings against Gupta based on almost identical claims but seeking enhanced administrative penalties. *Id.* at 506.  Gupta then filed suit against the Commission, claiming that its actions violated, *inter alia*, his constitutional rights under the equal protection clause. *Id.* at 506–07.  The court concluded that "the SEC's administrative machinery d[id] not provide a reasonable mechanism for raising or pursuing [the equal protection] claim," such that the plaintiff could not obtain  meaningful judicial review without district court jurisdiction. *Id.* at

513–14. It reasoned that Gupta would not be able to file counterclaims or pursue "the kind of discovery of SEC personnel that would be necessary to elicit admissible evidence corroborative of such a claim" in the administrative proceeding, and that the Commission "would be inherently conflicted in assessing such a claim." *Id.* The court also reasoned that "no administrative record bearing on this claim will be developed for any federal appellate court to review" *Id.* at 514.

Here, as in *Gupta*, Plaintiffs seek discovery, in the form of interrogatories and requests for admissions. Compl. ¶ 12. Yet, as in *Jarkesy*, 803 F.3d at 21–22, the information sought could be obtained through a subpoena for a witness to testify or to provide documentary evidence. Moreover, the appellate court may remand the case to the agency to develop the factual record. *E.g.*, *Virginia v. United States*, 74 F.3d 517, 525 (4th Cir. 1996) (noting that, for "all constitutional claims raised in a petition for review, . . . the CAA permits [the appellate court] to remand to EPA for the development of whatever record [it] need[s] to decide the issues before [it] on direct review"); *Blitz v. Napolitano*, 700 F.3d 733, 741 (4th Cir. 2012) (quoting *Virginia*). In any event, the claims at issue here do not require factual development, as they concern the laws creating SEC ALJs, defining their authority, and providing for their removal, all of which are subject to judicial notice. *See* Fed. R. Evid. 201(b) (enabling the court to take judicial notice of facts "not subject to reasonable dispute"). Thus, the absence of the specific discovery Plaintiffs reference does not make appellate review of the administrative proceeding any less meaningful. *See Jarkesy*, 803 F.3d at 21–22; *Virginia*, 74 F.3d at 525.

Plaintiffs also complain that they cannot bring counterclaims before the Commission, Pls.' Compl ¶ 12, and that their constitutional challenges "are not a defense to any particular Commission allegation or action," Pls.' Mem. 8. But, in *Tilton*, when the plaintiffs also raised an Appointments Clause challenge and argued that "SEC rules bar them from raising these claims

as counterclaims," the Southern District of New York insightfully stated that the plaintiffs' assertion "ignores the fact that these claims may be effectively raised as affirmative defenses," observing that the plaintiffs and "other similarly situated parties already raised these claims as affirmative defenses in their administrative proceedings." 2015 WL 4006165, at *5, *9. The court observed that "constitutional questions have been considered in numerous SEC administrative proceedings," including a current case "that has raised the same Article II challenge to the ALJ's appointment and removal scheme." *Id.* at *10. Moreover, the court noted that "[t]he Supreme Court has repeatedly stated that even if an administrative tribunal cannot address the constitutional claims at issue, meaningful review will still be had so long as the remedial scheme provides for federal appellate court review of those claims," as it does here. *Id.* at *10 (citing *Elgin*, 132 S. Ct. at 2136–37; *Thunder Basin*, 510 U.S. at 215). Therefore, Plaintiffs can obtain meaningful review without raising these issues as counterclaims in the administrative proceeding. *See id.*

Insofar as the *Gupta* Court also ruled that appellate judicial review would not be meaningful because "Gupta would be forced to endure the very proceeding he alleges is the device by which unequal treatment is being visited upon him," I respectfully disagree, given the Supreme Court holding that the time and expense of the administrative process are not grounds for proceeding instead before a district court. *See FTC v. Standard Oil Co.*, 449 U.S. 232, 244 (1980) (characterizing "the expense and annoyance of litigation" as "part of the social burden of living under government"); *Jarkesy*, 803 F.3d at 25–26 (observing that, when the Supreme Court held that the district court lacked jurisdiction over Standard Oil's claims while the FTC enforcement proceeding was ongoing, it "was unmoved by the company's claims of irreparable harm due to 'the expense and disruption of defending itself in protracted adjudicatory

proceedings' that the company believed never should have begun" (quoting *Standard Oil*, 449 U.S. at 244 (internal quotation marks omitted))); *Bebo v. S.E.C.*, 799 F.3d 765, 775 (7th Cir. 2015) (citing *Standard Oil*).   For the same reason, I also respectfully disagree with the conclusion reached in *Hill v. S.E.C.*, --- F. Supp. 3d ----, 2015 WL 4307088, at *5–9 (N.D. Ga. June 8, 2015), *appeal pending*, No. 15-12831 (11th Cir.); *Duka v. S.E.C.*, --- F. Supp. 3d ----, 2015 WL 1943245, at *5 (S.D.N.Y. Apr. 15, 2015); and *Ironridge Global IV, Ltd. v. SEC*, No. 15-2512-LMM, slip op. at 15–21 (N.D. Ga. Nov. 17, 2015), Morris Decl. Ex. 6, ECF No. 23-6, that there would be no meaningful judicial review if the plaintiff had to complete the administrative process, because, in the end, the proceeding he sought to enjoin would have occurred already. Indeed, if the SEC ALJ imposed sanctions, then, even if the administrative proceeding could not be undone, it would be meaningful for the appellate court to lift the sanctions if it found a constitutional violation.   *Hill* and *Duka I*, like *Gupta*, were decided without the guidance of *Bebo* or *Jarkesy*.

Here, as noted, Plaintiffs raise two constitutional challenges: They claim that (1) SEC ALJs are "inferior Officers" but, in violation of the Appointments Clause, they are not appointed by the SEC Commissioners, who function as the Heads of Department, *see* U.S. Const., art. II, § 2, cl. 2; and (2) the ability to remove SEC ALJs from office, which can be done only for good cause, is vested in other officers who also can be removed only for good cause, in violation of Article II, as construed in *Free Enterprise Fund*, 561 U.S. at 484.   Compl. ¶¶ 2–4.   Plaintiffs ultimately may raise these issues in the appellate court, and that appeal constitutes meaningful judicial review, notwithstanding any limitations in the SEC ALJ's initial review of these issues or the fact that Plaintiffs first must complete the administrative process.  *See Standard Oil*, 449 U.S. at 244; *Virginia*, 74 F.3d at 525; *Jarkesy*, 803 F.3d at 18, 21–22; *Bebo*, 799 F.3d at 774–75;

*Tilton*, 2015 WL 4006165, at *10; *see also Elgin*, 132 S. Ct. at 2136–37; *Thunder Basin*, 510 U.S. at 215.  Thus, in adherence to Supreme Court precedent and under the persuasive authority of the three appellate court decisions on the issue and the majority of the more recent district court decisions, I find that eventual appellate review is meaningful under the circumstances of this case, such that limiting this Court's jurisdiction does not foreclose all meaningful judicial review.  *See Standard Oil*, 449 U.S. at 244; *Virginia*, 74 F.3d at 525; *Jarkesy*, 803 F.3d at 18, 21–22; *Bebo*, 799 F.3d at 774–75; *Tilton*, 2015 WL 4006165, at *10; *Chau v. S.E.C.*, 72 F. Supp. 3d 417, 425–26 (S.D.N.Y. 2014); *Altman v. S.E.C.*, 768 F. Supp. 2d 554, 559–60 (S.D.N.Y. 2011); *see also Elgin*, 132 S. Ct. at 2136–37; *Thunder Basin*, 510 U.S. at 215.

### 2.   *Whether Suit is Wholly Collateral to Statute's Review Provisions*

As discussed, under the "vehicle" approach, a claim is not wholly collateral if it is brought after the administrative proceedings commence and it is the means by which the aggrieved party seeks to prevail against the agency.  I am persuaded by *Jarkesy* that the "vehicle" approach is the better approach to determining whether claims are wholly collateral. *See Jarkesy*, 803 F.3d at 23 (basing its conclusion that claims were not wholly collateral on their role as the "vehicle" for the plaintiffs to succeed against the agency in an ongoing proceeding); *Bebo*, 799 F.3d at 773–74 (contrasting *Free Enterprise Fund* and *Elgin* approaches to determining whether a claim is wholly collateral; noting that, before either *Bebo* or *Jarkesy* was decided, three district courts focused instead "on the relationship between the merits of the constitutional claim and the factual allegations against the plaintiff in the administrative proceeding," as the *Free Enterprise Fund* Court had done).  This approach accords with the Fourth Circuit's jurisdictional analysis in *Virginia*, 74 F.3d at 523, in which the court considered

"the practical objective of the complaint" and concluded that the claims fell within the agency's purview because "final agency action [was] the target of the challenger's claim."

Unsurprisingly, Plaintiffs couch their constitutional claims as unrelated to their administrative proceeding and therefore wholly collateral. Certainly, the claims are facial challenges and do not "arise from actions the Commission took in the course of" the administrative proceeding. *See Jarkesy*, 803 F.3d at 23. Yet, Plaintiffs did not bring their claims until after the administrative proceeding commenced, and the *Jarkesy* Court gave considerable weight to the timing of the claims. *See id.* (stating that claims brought "before" administrative proceedings began were not "in" the administrative review scheme, unlike claims brought "after" administrative proceedings began). Moreover, the claims go to the heart of the proceeding because they are "the 'vehicle by which' [Plaintiffs seek] to prevail in [their] administrative proceeding," by nullifying it. *See Jarkesy*, 803 F.3d at 23; *Elgin*, 132 S. Ct. at 2139–40. Thus, under the "vehicle" approach taken in *Elgin* and *Jarkesy*, Plaintiffs' constitutional claims are not wholly collateral. *See Jarkesy*, 803 F.3d at 23; *Elgin*, 132 S. Ct. at 2139–40. This factor, also, disfavors Plaintiffs.

It is true that, if I were to adopt the relationship approached applied in *Hill*, 2015 WL 4307088, at *9; *Duka*, 2015 WL 1943245, at *6; and *Gupta*, 796 F. Supp. 2d at 513, this factor would favor Plaintiffs, because the constitutional claims do not share a factual basis with the issues before the agency. Nonetheless, I agree with the *Bebo* Court that the first factor—the availability of meaningful judicial review—is the most significant and is dispositive in this case. Because Plaintiffs can obtain meaningful judicial review through the appellate process available under the Securities and Exchange Act, Congress intended for these claims to be reviewed under the statute and to limit the district court's jurisdiction in this instance. *See Free Enters. Fund v.*

*Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 489 (2010); *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207, 212 (1994).

<u>**Conclusion**</u>

For the foregoing reasons, I have dismissed this case for lack of jurisdiction. Because I have determined that I do not have jurisdiction, it is unnecessary for me to reach the merits of Plaintiffs' motion for a preliminary injunction. I previously filed an order denying Plaintiffs' motion and dismissing this case. ECF No. 29. The Clerk is directed to CLOSE THIS CASE.


Dated: <u>December 17, 2015</u>                    _____/S/_____

                                                     Paul W. Grimm
                                                     United States District Judge